UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARCUS TERRELL ROSS,

               Plaintiff,

        v.

SNOHOMISH COUNTY, et al.,

               Defendants.

CASE NO. C13-1467JLR

ORDER ON MOTION TO
DISMISS

## I.  INTRODUCTION

Before the court is Defendant Snohomish County's Federal Rule of Civil Procedure 12(b)(6) motion to dismiss Plaintiff Marcus Ross' complaint for failure to state a claim upon which relied can be granted.  (Mot. (Dkt. # 29).)[1]  The court has considered the motion, the parties' submissions filed in support of and opposition thereto, the

_____

[1] Snohomish County moves to dismiss the claims against it as well as the claims against other unnamed defendants:  Snohomish County Police Officers 1-5 and Does 6-10.  (Mot. at 1.)

1  balance of the record, and the applicable law.  Being fully advised, the court GRANTS in

2  part and DENIES in part Snohomish County's motion as explained below.

3  ## II.    BACKGROUND

4  This is a civil rights case.  Mr. Ross alleges that Snohomish County, unnamed

5  Snohomish County Police Officers,[2] and Does 6-10 (collectively "Snohomish County")

6  discriminated against him on the basis of his race, assaulted him, and falsely imprisoned,

7  arrested, and maliciously prosecuted him.  (*See* Am. Compl. (Dkt. # 2).)  Mr. Ross'

8  allegations stem from two incidents in which he was detained by Snohomish County

9  Police Officers.

10  The first incident occurred on January 19, 2010, when Mr. Ross was arrested by a

11  Snohomish County Police Officer for violating the terms of a civil protection order.  (*Id.*

12  ¶ 10.)  Per the terms of the protection order, Mr. Ross was prohibited from being within

13  500 feet of his former wife, S.L.H.  (*Id.* ¶ 14.)  In January 2010, however, Mr. Ross' four-

14  and six-year-old children reported to S.L.H.'s eight-year-old child from another marriage

15  that they had been driving with Mr. Ross looking for S.L.H.'s home.  (*Id.* ¶ 10.)  S.L.H.'s

16  eight-year-old child then recounted this conversation to S.L.H.'s boyfriend, who

17  recounted it to S.L.H.  (*Id.* ¶ 11.)  Later, S.L.H. made a report to the Snohomish County

18  Police that Mr. Ross had violated the terms of the civil protection order.  (*Id.*)

19

20  [2] Plaintiff's complaint makes claims against "Snohomish County Police Officers 1-5."

21  (*See generally*, Am. Compl.)  There is no such entity as the Snohomish County Police.  Thus, the court assumes the Plaintiffs' claims refer to deputies in the Snohomish County Sheriff's Office.  Furthermore, the court assumes that one of the unnamed "Snohomish County Police Officers" is

22  Deputy Chelin, whose actions are discussed at length in Mr. Ross' complaint.  (*See id.*)

1    An unnamed Snohomish County Sheriff Deputy followed up on S.L.H.'s report.

2   The Deputy interviewed Mr. Ross' four- and six-year-old children, and the four-year-old

3   stated that they had been near S.L.H.'s home.  (*Id.* ¶ 12.)  The Deputy then arrested Mr.

4   Ross at his home and took him to Snohomish County Jail, where he stayed overnight.

5   (*Id.* ¶ 13.)  Mr. Ross alleges that he asked the arresting Deputy to inform him of the time,

6   date, and location of the protection order violation, but that the Deputy refused to provide

7   this information.  (*Id.* ¶ 15.)  Mr. Ross also alleges that he asked the arresting Deputy to

8   contact other local police departments to review previous false police reports by S.L.H.

9   and that the Officer refused to do so.  (*Id.*)

10    The next day, January 20, 2010, a Snohomish County Judge affirmed the Deputy's

11   finding of probable cause for Mr. Ross' arrest and set bail.  (*Id.* ¶ 17.)  After he paid bail,

12   Mr. Ross was released from the Snohomish County Jail.  (*Id.* ¶ 18.)  Later, Mr. Ross

13   obtained his own cell phone records, which placed his whereabouts on the date and time

14   in question outside of the area where S.L.H.'s house is located; he submitted these

15   records to the Snohomish County Prosecutor's Office.  (*Id.* ¶¶ 18-19.)  Afterward, the

16   Snohomish County Prosecutor declined to prosecute Mr. Ross for the alleged protection

17   order violation, and also declined to prosecute S.L.H. for reporting the alleged violation

18   to the police.  (*Id.* ¶ 19.)

19    The second incident occurred on August 19, 2011, when Mr. Ross was detained by

20   a Snohomish County Sheriff's Deputy identified only as "J. Chelin."  (*Id.* ¶ 22, 25.)  On

21   that day, Snohomish County Superior Court dismissed S.L.H.'s civil protection order

22   against Mr. Ross and ordered that Mr. Ross could pick up his children from daycare.

ORDER- 3

1    (*Id.*)  Per the Court's order, Mr. Ross went to pick up his children from daycare that

2    afternoon.  (*Id.* ¶ 22.)  When he arrived at the daycare, Mr. Ross called 911 to inform

3    them that he was picking up his children pursuant to the Court's order and asked that a

4    Snohomish County Sheriff's Deputy be sent to the daycare to make sure there was no

5    trouble with S.L.H.  (*Id.*)  Before the Deputy could arrive, however, S.L.H. appeared at

6    the daycare.  (*Id.* ¶ 23.)  Mr. Ross again called 911 to request a deputy's assistance and to

7    ask when a Deputy would arrive.  (*Id.* ¶ 24.)  After Mr. Ross' second 911 call, his

8    children arrived back at the daycare from a field trip and got into Mr. Ross' car.  (*Id.*)

9    Mr. Ross then called 911 a third time to let them know that "he had both of his children

10   and he wanted to leave." (*Id.*)  The 911 operator instructed Mr. Ross to stay at the

11   daycare until the Deputy arrived and resolved any issues; the daycare staff also requested

12   that Mr. Ross speak to a supervisor before leaving with his children.  (*Id.*)

13           Eventually, Snohomish County Sheriff's Deputy Chelin arrived at the daycare.

14   Deputy Chelin asked Mr. Ross to identify himself, and when Mr. Ross did so he allegedly

15   "immediately grabbed him by the arm [and] twist[ed] it behind his back and push[ed] him

16   over the rear of his vehicle" and escorted Mr. Ross to the back of his squad car.  (*Id.*

17   ¶¶ 26-27.)  Deputy Chelin then allegedly reviewed a certified copy of the Superior

18   Court's order that Mr. Ross had brought to the daycare, but did not release Mr. Ross.

19   (*Id.*)  Mr. Ross alleges that during his confinement in Deputy Chelin's patrol car, Deputy

20   Chelin "refused to release [him] while yelling at him and berating him as [his] children

21   looked on, as well as [daycare] staff, other parents picking up their children, and S.L.H."

22   (*Id.*)  Mr. Ross claims that Deputy Chelin "went out of his way to find a reason to charge

ORDER- 4

Mr. Ross including measuring the distance from S.L.H.'s vehicle parked on the street to where the petitioner had been parked inside the school parking lot." (*Id.* ¶ 28.)

Mr. Ross allegedly sat in the back of Deputy Chelin's patrol car for 35 minutes in handcuffs before Deputy Chelin released him. (*Id.* ¶ 29.) The handcuffs allegedly "dug into [Mr. Ross'] wrist causing him great pain. (*Id.* ¶ 28.) Upon Mr. Ross' release, Deputy Chelin allegedly said, "[y]ou are lucky you are not going to jail!" (*Id.* ¶ 29.) Deputy Chelin also allegedly asked Mr. Ross if S.L.H. could come within 3 feet of him to speak with the children, and allegedly screamed at Mr. Ross about the meaning of protective orders when Mr. Ross refused. (*Id.* ¶ 30.) Mr. Ross contends that Deputy Chelin, "acting with deliberate malice and motivated by race, sought to humiliate and torment [him] under the color of law." (*Id.* ¶ 31.) He also contends that Deputy Chelin perjured himself in his police report on the incident by claiming that S.L.H. had been granted a protection order against Mr. Ross. (*Id.* ¶ 32.)

Mr. Ross filed the instant lawsuit against Snohomish County on August 16, 2013, alleging state and federal claims of racial discrimination, and state claims for false arrest, malicious prosecution, outrage, and assault and battery arising from his two interactions with Snohomish County Sheriff's Deputies. (*See* Compl. (Dkt. # 1).) Mr. Ross amended his complaint the same day it was filed, and his amended complaint alleges these same causes of action. (*Compare* Compl.; Am. Compl.)

Snohomish County has now attempted to dismiss Mr. Ross' complaint three times. After receiving the complaint on August 19, 2013, Snohomish County initially moved to dismiss the action on the basis of improper service and failure to state a claim. (10/03/13

ORDER- 5

1 Mot. (Dkt. # 7).)  Because Mr. Ross served Snohomish County himself, service was

2 indeed improper under Fed. R. Civ. P. 4(c)(2), which prohibits service by a party to the

3 case, and the court ordered service quashed on November 26, 2013, but denied

4 Snohomish County's motion to dismiss.  (11/26/13 Ord. (Dkt. # 19).)  Next, Snohomish

5 County moved to dismiss the action because Mr. Ross had failed to timely correct the

6 service defects.  (12/23/13 Mot. (Dkt. # 20).)  The court again denied Snohomish

7 County's motion to dismiss and extended Mr. Ross' time to effect service.  (2/3/14 Ord.

8 (Dkt. # 28).)  Now, Snohomish County moves to dismiss Mr. Ross' complaint for failure

9 to state a claim under Federal Rule of Civil Procedure 12(b)(6).  (2/4/14 Mot. (Dkt.

10 # 29).)  Snohomish County argues that Mr. Ross' claims are barred by the applicable

11 statutes of limitation and that he fails to allege sufficient facts to state claims under a

12 cognizable legal theory.  (*Id.* at 1.)  In response, Mr. Ross argues that Snohomish

13 County's motion is barred by the doctrines of collateral estoppel and *res judicata*, that his

14 claims are not barred by statutes of limitation because they are timely under the

15 continuing violation doctrine, and that he has alleged sufficient facts to state claims for

16 relief.  (Resp. (Dkt. # 30).)

### III.    ANALYSIS

**A.    Mr. Ross' Collateral Estoppel and *Res Judicata* Arguments**

19          As a threshold matter, Mr. Ross' argument that Snohomish County's motion is

20 barred by either collateral estoppel or *res judicata* is unavailing.  (*See* Resp. at 1.)

21 Generally, collateral estoppel bars relitigation of an issue in a subsequent proceeding

22 involving the same parties. *In re Jacobson*, 676 F.3d 1193, 1201 (9th Cir. 2012). *Res*

1   *judicata* is similar in that it bars a subsequent suit between the same parties where there

2   has already been a final judgment on the merits.  *See, e.g.*, *Americana Fabrics, Inc. v. L*

3   *& L Textiles, Inc.*, 754 F.2d 1524, 1528-30 (9th Cir. 1985) (discussing the doctrine

4   generally).

5          Neither doctrine applies here.  To begin, both doctrines are predicted on the

6   existence of a prior action, and here there is no prior action.  Instead, Mr. Ross claims

7   that collateral estoppel and *res judicata* bar this motion because Snohomish County

8   brought previous motions concerning the same topics.  Mr. Ross points the court to no

9   authority for the proposition that collateral estoppel or *res judicata* apply in this context.

10  More to the point, an essential element of both doctrines is that the prior issue or claim

11  have been decided by a final judgment on the merits.  *See, e.g.*, *Tritz v. U.S. Postal Serv.*,

12  721 F.3d 1133, 1141 (9th Cir. 2013) (*res judicata*); *Skilstaf, Inc. v. CVS Caremark Corp.*,

13  669 F.3d 1005, 1021 (9th Cir. 2012) (collateral estoppel).  This element is not met here.

14  Although it is true that Snohomish County has brought two prior motions to dismiss, both

15  motions were decided on Rule 12(b)(5) jurisdictional grounds and neither was decided on

16  the merits.  (*See* 11/26/13 Ord. (granting motion to dismiss in part on jurisdictional

17  grounds); 2/3/14 Ord. (denying motion to dismiss on jurisdictional grounds).)

18         Moreover, the court's prior orders contemplated this very motion.  In its

19  November 26, 2013, order the court denied Snohomish County's motion without

20  prejudice and explicitly gave the County leave to "refil[e] or re-rais[e] the same issues."

21  (11/26/13 Ord. at 3.)  Thus, because the court has not considered the arguments

22  underlying Snohomish County's Rule 12(b)(6) motion and has not made a final decision

1   on the merits of that motion, Snohomish County's motion is not barred by collateral

2   estoppel, *res judicata*, or any related doctrine.  The court will proceed to consider

3   Snohomish County's motion to dismiss.

4   **B.      Snohomish County's Motion to Dismiss**

5        1.   <u>Legal Standards</u>

6        When considering a motion to dismiss under Federal Rule of Civil Procedure

7   12(b)(6), the court construes the complaint in the light most favorable to the non-moving

8   party.  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir.

9   2005).  The court must accept all well-pleaded facts as true and draw all reasonable

10  inferences in favor of the plaintiff.  *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135

11  F.3d 658, 661 (9th Cir. 1998).  "To survive a motion to dismiss, a complaint must contain

12  sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

13  face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

14  550 U.S. 544, 570 (2007)); *see Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th

15  Cir. 2010).  "A claim has facial plausibility when the plaintiff pleads factual content that

16  allows the court to draw the reasonable inference that the defendant is liable for the

17  misconduct alleged."  *Iqbal*, 556 U.S. at 677-78.  Dismissal under Rule 12(b)(6) can be

18  based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

19  under a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699

20  (9th Cir. 1990).  Further, dismissal is proper on the ground that a claim is barred by the

21  applicable statute of limitations if the running of the limitations period is apparent on the

22  face of the complaint.  *See Jones v. Block*, 549 U.S. 199, 215 (2007) ("If the

allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim."); *Morales v. City of L.A.*, 214 F.3d 1151, 1153 (9th Cir. 2000).

　　　2.　The Applicable Statutes of Limitation Bar Mr. Ross' Claims Arising From His 2010 Arrest

　　　Many of Mr. Ross' claims are barred by applicable statutes of limitation. Specifically, all of Mr. Ross' claims arising from his January 19, 2010, arrest have either two- or three-year limitations periods that expired before he filed this action on August 16, 2013.  (*See* Dkt.)  Mr. Ross' untimely claims arising from his January 2010 arrest include:  his state tort claims for intentional infliction of emotional distress, false arrest, false imprisonment, malicious prosecution, and assault and battery; his discrimination claims under Washington's Law Against Discrimination ("WLAD"); and his federal 42 U.S.C. § 1983 claims for constitutional violations.[3]  Two-year statutes of limitation bar Mr. Ross' false arrest, false imprisonment, and assault and battery claims.  *See* RCW 4.16.100(1); *Heckart v. City of Yakima*, 708 P.2d 407, 407 (Wash. Ct. App. 1985) (holding that the two-year statute of limitation in RCW 4.16.100(1) applies to false arrest claims).  Likewise three-year statutes of limitation bar Mr. Ross' malicious prosecution, WLAD, and § 1983 claims.  *See Gausvik v. Abbey*, 107 P.3d 98, 105 (Wash. Ct. App. 2005) (noting that malicious prosecution is a personal injury action subject to the three-year statute of limitations in RCW 4.16.080(2)); *Antonius v. King Cnty.*, 103 P.3d 729,

---

[3] Mr. Ross does not indicate in his amended complaint which of his claims relate to his January 2010 arrest and which relate to the August 2011 incident.  (*See* Compl.)  Therefore, the court construes all of Mr. Ross' claims as flowing from both events.

732 (Wash. 2004) (noting that WLAD does not contain its own limitations period and that discrimination claims must be brought within three years under the general statute of limitation for personal injury actions); *Bagley v. CMC Real Estate Corp*., 923 F.2d 758, 760 (9th Cir. 1991) (noting that federal courts borrow state statutes of limitation for personal injury actions in § 1983 suits, and that the applicable Washington statute of limitation is three years).  Last, Mr. Ross' intentional infliction of emotional distress claim is barred by either a two- or three-year statute of limitations.  *See Doe v. Finch*, 942 P.2d 359, 361 (Wash. 1997) (noting that Washington courts disagree about the applicable statute of limitations); *but see Cox v. Oasis Physical Therapy, PLLC*, 222 P.3d 119, 127 (Wash. Ct. App. 2009) (applying 3-year statute of limitations).  Regardless, more than three years elapsed between the January 2010 incident and the filing of this complaint.

Further, the "continuing violation" doctrine does not save Mr. Ross' claims.  Mr. Ross argues that the statutes of limitation are tolled for his January 2010 claims because the two incidents are "sufficiently related."  (Resp. at 4-5.)  Mr. Ross cites *Morgan v. National Railroad Passenger Corporation*, 232 F.3d 1008 (2000), to support his argument.  (*See id.*)  Although the Ninth Circuit in *Morgan* did hold that pre-limitations period events could be considered by the jury for the purposes of employment discrimination based on the continuing violation doctrine, that case has been overruled by the United States Supreme Court.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117-18 (2002).  In *Morgan*, the Supreme Court rejected the continuing violation doctrine in this context, holding that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  *Id.* at

122.  Although *Morgan* was a Title VII employment discrimination case, and the present case is premised on state discrimination and § 1983 claims, Ninth Circuit courts have applied *Morgan* to bar § 1983 claims predicated on discrete time barred-acts, notwithstanding that those acts are related to timely filed claims.  *See, e.g.*, *Carpinteria Valley Farms, Ltd. v. Cnty. of Santa Barbara*, 344 F.3d 822, 829 (9th Cir. 2003) (citing *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1061 (9th Cir. 2002)).  Likewise, there is no indication that the situation is any different under Washington law and the WLAD.  *See Antonius*, 103 P.3d at 735-36 (applying *Morgan* and rejecting continuing violations doctrine).

It is clear from the face of Mr. Ross' complaint that he has failed to state valid claims with respect to his January 2010 arrest because the statutes of limitation have run and the continuing violation doctrine does not apply; thus, the court GRANTS Snohomish County's motion to dismiss with respect to these claims.

### 3.  Mr. Ross' Claims Arising From The 2011 Incident

Next, the court turns to Mr. Ross' claims based on the 2011 incident, in which Deputy Chelin allegedly falsely arrested and imprisoned Mr. Ross.

#### a.  *Claims for Outrage and Intentional Infliction of Emotional Distress*

First, Mr. Ross brings claims for outrage and intentional infliction of emotional distress.  (Am. Compl. ¶¶ 34-36, 44-45.)   However, Mr. Ross' has failed to allege facts sufficient to state these claims. Under Washington law, the tort claim of outrage is synonymous with the tort claim of intentional infliction of emotional distress.  *See generally Kloepfel v. Bokor*, 66 P.3d 630, 632 (2003).  The claim has three elements:  (1)

1  extreme and outrageous conduct; (2) intentional or reckless infliction of emotional

2  distress; and (3) the plaintiff's severe emotional distress. *Id.* at 632. For behavior to

3  meet the first prong it must be "so outrageous in character, and so extreme in degree, as

4  to go beyond all possible bounds of decency and [] be regarded as atrocious, and utterly

5  intolerable in a civilized community." *Id.* Behavior consisting of "mere insults,

6  indignities, threats, annoyances, petty oppressions, or other trivialities" does not rise to

7  the requisite level of offending behavior. *Id.*

8        The standard for outrage is not met here, even assuming all of the facts alleged by

9  Mr. Ross are true and drawing all reasonable inferences in his favor. *See Wyler Summit*,

10  135 F.3d at 661. Mr. Ross alleges that Deputy Chelin yelled at him, screamed at him,

11  and berated him. (Am. Compl. ¶ 26-33.) Specifically, he alleges that Deputy Chelin

12  "grabbed him," twisted his arm behind his back, and pushed him against his vehicle. (*Id.*

13  ¶ 26.) Mr. Ross alleges that he "pleaded with [Deputy] Chelin not to arrest him in front

14  of his children," but Deputy Chelin responded that he "did not care." (*Id.*) He alleges

15  that Deputy Chelin detained him for 35 minutes despite knowing he had done nothing

16  wrong. (*Id.* ¶ 28.) Finally, Mr. Ross alleges that Deputy Chelin told him "you are lucky

17  you are not going to jail" and "screamed at" Mr. Ross when Mr. Ross refused to allow

18  S.L.H. near him. (*Id.* ¶¶ 29-30.)

19        Even assuming all of this is true, Mr. Ross does not state a claim for outrage.

20  Behavior involving "mere insults, indignities, threats, annoyances, petty oppressions, or

21  other trivialities" does not rise to the requisite level of offending behavior. *Kloepfel*, 66

22  P.3d at 632. Mr. Ross has described a course of conduct that, if true, would be

1   objectionable.  But the conduct described consists of "mere insults, indignities, threats,"

2   and the like.  It does not meet the high standard required to state a claim for outrage.  Mr.

3   Ross has not described conduct "so outrageous in character, and so extreme in degree, as

4   to go beyond all possible bounds of decency and [] be regarded as atrocious, and utterly

5   intolerable in a civilized community."  *See id.*

6         Accordingly, the court GRANTS Snohomish County's motion to dismiss with

7   respect to this claim but permits Mr. Ross leave to amend within 15 days.

8             *b.  Claims under the WLAD*

9         Similarly, Mr. Ross has failed to allege sufficient facts to support a claim under

10   WLAD.  Mr. Ross' complaint mentions WLAD only briefly, making a passing reference

11   in the section dedicated to his § 1983 claims.  (Am. Compl. ¶¶ 47, 51.)  It is not clear

12   whether Mr. Ross intends to allege a standalone WLAD claim or merely to incorporate

13   references to the WLAD into his § 1983 claims.  (*See id.*)  Thus, the court will give Mr.

14   Ross the benefit of the doubt and construe his claim as a standalone WLAD claim based

15   on the most closely analogous WLAD cause of action:  a claim for discrimination in a

16   place of public accommodation.  *See* RCW 49.60.030.

17         RCW 49.60.030 creates a cause of action for discrimination in a place of public

18   accommodation.  Under that statute, "[a]ny person deeming himself or herself injured by

19   any act in violation of this chapter shall have a civil action in a court of competent

20   jurisdiction . . . ."  RCW 49.60.030.  The statute establishes "[t]he right to be free from

21   discrimination because of race . . . ," in a place of public accommodation, defining "place

22

ORDER- 13

1   of public accommodation" as "any place of public resort, accommodation, assemblage, or

2   amusement," including:

> any place, licensed or unlicensed, kept for gain, hire, or reward, or where
> charges are made for admission, service, occupancy, or use of any property
> or facilities, whether conducted for the entertainment, housing, or lodging
> of transient guests, or for the benefit, use, or accommodation of those
> seeking health, recreation, or rest, or for the burial or other disposition of
> human remains, or for the sale of goods, merchandise, services, or personal
> property, or for the rendering of personal services, or for public conveyance
> or transportation on land, water, or in the air, including the stations and
> terminals thereof and the garaging of vehicles, or where food or beverages
> of any kind are sold for consumption on the premises, or where public
> amusement, entertainment, sports, or recreation of any kind is offered with
> or without charge, or where medical service or care is made available, or
> where the public gathers, congregates, or assembles for amusement,
> recreation, or public purposes, or public halls, public elevators, and public
> washrooms of buildings and structures occupied by two or more tenants, or
> by the owner and one or more tenants, or any public library or educational
> institution, or schools of special instruction, or nursery schools, or day care
> centers or children's camps . . . .

RCW 49.60.040.  To demonstrate a prima facie case of race discrimination in a place of

public accommodation under the WLAD, a plaintiff must show that:  (1) he is a member

of a protected class; (2) the defendant's establishment is a place of public

accommodation; (3) the defendant discriminated against plaintiff by not treating him in a

manner comparable to the treatment it provides to persons outside that class; and (4) the

protected status was a substantial factor causing the discrimination.  *Demelash v. Ross*

*Stores, Inc.*, 20 P.3d 447, 456-57 (Wash. Ct. App. 2001).

Mr. Ross has not alleged a prima facie case of race discrimination in a place of

public accommodation.  Instead, he makes only the bare allegations that "Defendants had

a duty to provide plaintiff his substantive due process rights under . . . RCW 49.60.030,"

ORDER- 14

1    and "as a result of defendants violation of 42 U.S.C. § 1983 and RCW 49.60.030,

2    plaintiff suffered emotional distress, severe pain, humiliation, embarrassment, and

3    diminished respect in the eyes of the community."  (Am. Compl. ¶¶ 47, 51.)  In

4    considering a motion to dismiss, the court is not required to accept as true "allegations

5    that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

6    *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Nor is the court

7    required to accept "conclusory legal allegations cast in the form of factual allegations if

8    those conclusions cannot reasonably be drawn from the facts alleged."  *Clegg v. Cult*

9    *Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  Here, Mr. Ross has barely

10   even provided conclusory allegations with respect to any WLAD claim.  (*See* Am.

11   Compl. ¶¶ 46-51.)  Indeed, it is not even clear whether he intends to pursue such a claim.

12   As such, Mr. Ross has not stated a plausible claim for race discrimination in a place of

13   public accommodation under the WLAD because the court cannot "draw the reasonable

14   inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

15   The court GRANTS Snohomish County's motion to dismiss with respect to this claim but

16   permits Mr. Ross leave to amend within 15 days.

17                    *c.  Mr. Ross' Claims for "Constitutional Rights Violations"*

18           Next, the court turns to Mr. Ross' claims for violation of his constitutional rights.

19   Mr. Ross brings these claims under 42 U.S.C. § 1983.  (Am. Compl. ¶¶ 46-51.)  To prove

20   a claim under § 1983, a plaintiff must show that (1) he suffered a violation of rights

21   protected by the Constitution or created by federal statute; and (2) the violation was

22   proximately caused by a person acting under color of state or federal law.  *See, e.g.*,

1    *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  Mr. Ross' complaint can be

2    reasonably construed to allege three different § 1983 claims:  (1) excessive force based

3    on handcuffing; (2) violation of due process based on allegedly false information

4    provided in the police report; and (3) improper seizure and false arrest.  (*See* Am.

5    Compl.)

6                     i.   Excessive Force

7               The court considers the excessive force claim first.  Mr. Ross alleges that Deputy

8    Chelin "grabbed him by the arm twisting it behind his back and pushing him over the rear

9    of his vehicle." (*Id.* ¶ 26.)  He alleges that, afterwards, he "sat in the rear of the patrol car

10   with his hand cuffed behind his back for 35 minutes . . ." and that "[t]he handcuffs dug

11   into [his] wrist causing him great pain." (*Id.* ¶ 28.)

12              The law surrounding excessive force claims of this nature is relatively well-settled.

13   All allegations that law enforcement officers have used excessive force are examined

14   under the Fourth Amendment and its reasonableness standard, and the framework

15   outlined by the Supreme Court in *Graham v. Connor*, 490 U.S. 386 (1989).  *Smith v. City*

16   *of Hemet*, 394 F.3d 689, 700 (9th Cir. 2005).  The Supreme Court has declared that the

17   "reasonableness" inquiry asks whether the officer's actions are "objectively reasonable"

18   in light of the facts and circumstances confronting him or her.  *Graham*, 490 U.S. at 397.

19   The court applies *Graham* by first considering the nature and quality of the alleged

20   intrusion, and then considering the governmental interests at stake by looking at:  (1) the

21   severity of the crime at issue; (2) whether the suspect poses an immediate threat to the

22   safety of the officers or others; and (3) whether he is actively resisting arrest or

1   attempting to evade arrest by flight.  *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir.

2   2011).  The court's consideration of reasonableness, however, is not limited to these three

3   factors.  Rather, the court must consider the totality of the circumstances and weigh the

4   gravity of the intrusion against the government's interest to determine whether the force

5   employed was constitutionally reasonable.  *See Miller v. Clark Cnty.*, 340 F.3d 959, 968

6   (9th Cir. 2003); *see also Mattos*, 661 F.3d at 441 ("[I]n assessing the governmental

7   interests at stake under *Graham*, we are free to consider issues outside the three

8   enumerated . . . when additional facts are necessary to account for the totality of

9   circumstances in a given case.").

10        "Tight handcuffs" claims are not uncommon in the Ninth Circuit.  The Ninth

11  Circuit has held that excessively tight handcuffing can constitute a Fourth Amendment

12  violation.  *See, e.g.*, *Wall v. Cnty. of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004);

13  *LaLonde v. Cnty. of Riverside*, 204 F.3d 947, 960 (9th Cir. 2000); *Alexander v. Cnty. of

14  L.A.*, 64 F.3d 1433, 1436 (9th Cir. 1993); *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th

15  Cir. 1993); *Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989).  The parameters of these

16  claims have some well-established boundaries.  For example, in each of the cases cited

17  above, the plaintiffs suffered damage to their wrists or hands as a consequence of the

18  handcuffing.  *See Powell v. Beverly Hills Police Dep't*, No. CV 06-5082 RGK (FFM),

19  2008 WL 4821001, at *5 (C.D. Cal. Oct. 30, 2008) (analyzing the Ninth Circuit authority

20  cited above).

21        One case that is particularly relevant here is *Startzell v. Velie*, No. C04-5259RBL,

22  2005 WL 1645802 (W.D. Wash. 2005).  In *Startzell*, the plaintiff alleged that it was

1   unreasonable for deputies to force his hands behind his back after he informed them that

2   he had a history of rotator cuff injury to his left shoulder, and that officers should have

3   used an alternate technique. *Id.* at *6. He also claimed that the officers used

4   unreasonable force when he complained that the handcuffs were too tight, and they

5   refused to loosen them. *Id.* Judge Ronald Leighton found that there was no evidence in

6   the record that the deputy's actions in fact caused injury to the plaintiff's shoulder, and

7   that accordingly the deputy's "use of [an] accepted law enforcement technique did not

8   constitute the use of unreasonable force." *Id.* Judge Leighton also found that the lack of

9   medical or other evidence to support any injury as a result of the alleged tightening of

10  plaintiff's handcuffs, other than minor cuts or scrapes, also precluded a finding of

11  excessive force. *Id.* at *7 (citing *Rodriguez v. Farrell*, 280 F.3d 1341, 1352 (11th Cir.

12  2002) (holding that "painful handcuffing, without more, is not excessive force . . . where

13  the resulting injuries are minimal.")).

14       This case is similar to *Startzell*. Mr. Ross has not alleged any lingering injury that

15  resulted from the handcuffing incident or the forcing of his hands behind his back. (*See*

16  Am. Compl. ¶¶ 28-33.) Instead, he merely alleges that the handcuffing caused him "great

17  pain." (*Id.* ¶ 28.) Mr. Ross does not even allege minor cuts or scrapes, as in *Startzell*, or

18  indeed any injury at all beyond the immediate pain. (*See id.*) Without these allegations,

19  the court cannot entertain a claim for excessive force based on handcuffing. *See Startzell*,

20  2005 WL 1645802, at *7 ("[P]ainful handcuffing, without more, is not excessive

21  force . . . where the resulting injuries are minimal.") Thus, the court GRANTS

22

1  Snohomish County's motion to dismiss Mr. Ross' excessive force claim with leave to

2  amend within 15 days.

3           ii.  Due Process

4           Mr. Ross has not sufficiently alleged a due process claim either.  His due process

5  claim is based on his allegation that Deputy Chelin fabricated his police report regarding

6  the incident.  (*See* Am. Compl. ¶¶ 32-33.)  Specifically, Mr. Ross alleges that Deputy

7  Chelin "perjured himself in his police report by claiming that S.L.H. had been granted the

8  protection order against the Plaintiff.  [S.L.H.] used Officer Chelin's Police Report in the

9  parties['] ongoing custody battle over their two minor children."  (*Id.*)  However, in order

10  to pursue a § 1983 due process claim based on a fabricated police report, Mr. Ross must

11  allege that some constitutional harm befell him as a result of the fabrication.  *Hennick v.*

12  *Bowling*, 115 F. Supp. 2d. 1204, 1208 (W.D. Wash. 2012); *Curtis v. Riley*, No. C08-5109

13  BHS/KLS, 2012 WL 4882318, at *8 (W.D. Wash. July 23, 2012) (holding that if a

14  fabrication of evidence "had the potential to, but did not, impinge on plaintiffs'

15  constitutionally protected rights," and caused only "extra defense costs, injury to

16  reputation, prosecution with malice, emotional distress, etc., such injuries are not of

17  constitutional dimension and cannot form the basis of a § 1983 claim."); *see generally*

18  *Compensating Victims of Police-Fabricated Confessions*, 10 U. CHI. L. R. 1119, 1128-29

19  (2003); *cf. Albright v. Oliver*, 510 U.S. 266, 269-75 (1994).[4]  Mr. Ross has made no such

20

21           [4] The court notes that there is some disagreement on this question among circuits.  *See,*
22  *e.g.*, *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997).  Nevertheless, the court finds
the position taken by the Western District of Washington persuasive for the reasons (continued)

1    allegations here.  His vague assertion that "[S.L.H.] used Officer Chelin's Police Report

2    in the parties['] ongoing custody battle over their two minor children" is not enough to

3    establish a constitutional injury.  (*See* Compl. ¶ 32.)  Mr. Ross does not allege any harm

4    that came about as a result of this alleged use.  (*See id.* ¶¶ 32-33.)  The court can

5    reasonably infer additional injuries, such as emotional distress and injury to reputation,

6    but as the court in *Curtis* held, such allegations do not give rise to a colorable claim for

7    violation of § 1983.  *Curtis*, 2012 WL 4882318, at *8.  The court therefore GRANTS

8    Snohomish County's motion to dismiss Mr. Ross' § 1983 due process claim with leave to

9    amend within 15 days.

10                       iii. Improper Seizure/False Arrest

11         Last, the court examines Mr. Ross' § 1983 claim for improper seizure/false arrest.

12   "A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth

13   Amendment provided that the arrest was made without probable cause or other

14   justification."  *Dubner v. City and Cnty. of San Fran.*, 266 F.3d 959, 964 (9th Cir. 2001).

15   To prove a claim for false arrest or improper seizure of a person under § 1983, a plaintiff

16   must demonstrate that (1) the defendant lacked probable cause to arrest the plaintiff; and

17   (2) the defendant actually arrested the plaintiff.  *Hernandez v. Cnty. of Marin*, No. C 11-

18   03085, 2012 WL 1207231, at *8 (N.D. Cal. April 11, 2012) (citing *Cabrera v. City of*

19   *Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998)).

20   _____

21   explained by Judge Robert Lasnik in *Hennick*, 115 F. Supp. 2d at 1207-09.  This position is also

22   more consistent with analogous United States Supreme Court case law.  *See Albright*, 510 U.S. at
     269-75.

1    Here, Mr. Ross alleges that Deputy Chelin did not have probable cause to arrest

2    him, and that he was detained in Deputy Chelin's patrol car for 35 minutes. (Am. Compl.

3    ¶¶ 25-28.) He alleges that Deputy Chelin did no investigation before determining

4    whether arrest was proper, instead simply asking if he was Mr. Ross and then arresting

5    him. (*Id.* ¶ 26.) He alleges that Deputy Chelin had notice that he had a valid court order

6    entitling him to pick up his children because Mr. Ross had called 911 several times to

7    request assistance. (*Id.* ¶ 27.) He also alleges that he had a copy of the court's order in

8    his hand at the time of his arrest, and that Deputy Chelin said he "did not care." (*Id.*

9    ¶¶ 26-27.) In other words, he alleges the facts comprising his false arrest claim with

10   reasonable specificity and enough detail for the court to conclude that his claim is

11   plausible. (*See id.*) Mr. Ross is entitled to the truth of these allegations at the motion to

12   dismiss stage, as well as all reasonable inferences that may be drawn therefrom. *Wyler*

13   *Summit*, 135 F.3d at 661. Thus, at this stage, Mr. Ross has alleged sufficient facts to state

14   a plausible § 1983 claim for false arrest.

15   Snohomish County raises two arguments for why this claim should nevertheless

16   be dismissed. First, the County argues that Mr. Ross has not made out a case of

17   municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658, 691

18   (1978). This argument has merit. A municipality cannot be held liable pursuant to

19   § 1983 under a theory of respondeat superior liability. *Id.* Instead, under *Monell*,

20   municipalities may be liable for § 1983 constitutional violations only if a plaintiff

21   demonstrates an injury resulting from the "execution of a government's policy or custom,

22   whether made by its lawmakers or by those whose edicts or acts may fairly be said to

1    represent official policy." *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 900 (9th

2    Cir. 2008).  Mr. Ross must prove the existence of four conditions to make out his § 1983

3    *Monell* claim.  *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996).  Mr.

4    Ross must show:  (1) that he possessed a constitutional right of which he was deprived;

5    (2) that the City had a custom or policy; (3) that the City's custom or policy amounts to

6    deliberate indifference to his constitutional rights; and (4) that the custom or policy was

7    the moving force behind the violation of his constitutional rights.  *See id.* (internal

8    citations omitted); *accord Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1185-86, 1193-94

9    (9th Cir. 2002) (citing *Monell*, 436 U.S. at 694).  Mr. Ross does not allege any facts

10    suggesting that his detention by Deptuy Chelin was the result of any Snohomish County

11    custom or policy.  Instead, he alleges that Deputy Chelin acted out of "hostility and

12    cruelty against Mr. Ross."  (Am. Compl. ¶ 26.)  He does not suggest a single custom,

13    policy, or practice by Snohomish County that resulted in his alleged false arrest.  A

14    municipality can also be liable for failure to train its employees properly, but there are no

15    allegations here with respect to training.  *See Galen v. Cnty. of L.A.*, 477 F.3d 652, 667

16    (9th Cir. 2007).  As such, Mr. Ross has not stated a plausible claim for § 1983 false arrest

17    liability against the County.[5]

18

19    ————————————

20    [5] The same is true with respect to Mr. Ross' due process and excessive force claims under § 1983.  If Mr. Ross chooses to amend his complaint to continue to seek relief against

21    Snohomish County, he must allege a policy or custom not only for his false arrest claim, but for all claims brought under § 1983 against Snohomish County as well.  The same is true for

22    qualified immunity, which would apply not only to Mr. Ross' false arrest claim, but to his other constitutional claims as well should he allege sufficient facts for those claims to proceed.

1       Second, the County argues that the unnamed individual defendants are entitled to

2 qualified immunity.  Here, the court finds that dismissal is not appropriate.  Qualified

3 immunity protects government officials from liability for civil damages insofar as their

4 conduct does not violate clearly established statutory or constitutional rights about which

5 a reasonable person would have known.  *Mattos*, 661 F.3d at 440 (citing *Pearson v.*

6 *Callahan*, 555 U.S. 223, 231 (2009)).  In determining whether an official is entitled to

7 qualified immunity, courts apply a two-step test:  First, the court must determine if,

8 taking the facts in the light most favorable to the non-moving party, the officer violated

9 one of the plaintiff's constitutional rights.  *Id.*  Second, if the answer to the first question

10 is "yes," the court must "determine whether the constitutional right was 'clearly

11 established in light of the specific context of the case' at the time of the events in

12 question."  *Id.* (quoting *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009)); *see also*

13 *Bryan v. MacPherson*, 630 F.3d 805, 823 (9th Cir. 2010).  When considering whether a

14 right is clearly established, the reviewing court must consider whether a reasonable

15 officer under the same circumstances would recognize that his or her conduct violates the

16 law that existed at the time. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011).

17       To assess the first step, it is necessary to examine the nature of Mr. Ross'

18 detention.  Under the Fourth Amendment, police stops fall into three categories.

19 *Morgan v. Woessner*, 997 F.2d 1244, 1252 (9th Cir. 1993).  First, a police officer may

20 stop a person for questioning so long as the person is free to leave at any time.  *Id.*

21 Second, a police officer may "seize" a person for a brief, investigatory stop.  *Id.*  A

22 seizure takes place when a "police officer accosts an individual and restrains his freedom

ORDER- 23

to walk away." *Terry v. Ohio*, 392 U.S. 1, 16 (1968).  Such stops must be supported by a "reasonable suspicion to believe that criminal activity 'may be afoot.'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002).  Finally, the police may make a full-scale arrest, which must be supported by probable cause.  *Morgan*, 997 F.2d at 1252 (citing *Adams v. Williams*, 407 U.S. 143, 148-49 (1972)).  Here, because many facts remain unresolved, it is not crystal clear whether Mr. Ross' detention was a "seizure," or an "arrest."  Thus, it cannot be determined at this stage whether the correct standard is "reasonable suspicion" or "probable cause."  *See Arvizu*, 534 U.S. at 273; *Morgan*, 997 F.2d at 1252.

When determining whether reasonable suspicion exists, a court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing."  *Arvizu*, 534 U.S. at 273.  A "reasonable suspicion may not be based on broad profiles which cast suspicion on entire categories of people without any individualized suspicion of the particular person to be stopped."  *United States v. Sigmond-Ballesteros*, 285 F.3d 1117, 1121 (9th Cir. 2002) (internal quotations omitted).  Likewise, an "individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime."  *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (citing *Brown v. Texas*, 443 U.S. 47 (1979)).

Probable cause is a more demanding standard than reasonable suspicion.  *Id.* at 123.  Probable cause exists if "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime."  *Jackson v. City of Seattle*, NO. C05-2034 JLR, 2006

1    U.S. Dist. LEXIS 76629, at *6 (W.D. Wash. Oct. 20, 2006) (quoting *Grant v. City of*

2    *Long Beach*, 315 F.3d 1081, 1085 (9th Cir. 2002)).  Stated another way, probable cause

3    to arrest exists when the officer has knowledge or reasonably trustworthy information

4    sufficient to lead a person of reasonable caution to believe that an offense has been or is

5    being committed. *Beck v. Ohio*, 379 U.S. 89, 91 (1964).  Probable cause is an objective

6    standard. *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007).  However,

7    although in some instances there may initially be probable cause justifying an arrest,

8    when additional information obtained at the scene indicates that "there is less than a fair

9    probability that the defendant has committed or is committing a crime . . . [the] execution

10   of the arrest or continuation of the arrest is illegal." *Id.* at 1073 (citing *United States v.*

11   *Ortiz-Hernandez*, 427 F.3d 567, 574 (9th Cir. 2005).

12          In this case, a fair determination of either probable cause or reasonable suspicion

13   is impossible at this time.  The court has virtually no information about what Deputy

14   Chelin knew when he made the arrest. (*See* Compl.)  At the motion to dismiss stage, the

15   court is limited to the pleadings, which are assumed true, and documents referred to in

16   the complaint. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  No such documents

17   are before the court at this time, so the court is limited to examining Mr. Ross'

18   allegations. *See id.*  This leaves a substantial amount of information unknown.

19          Specifically, the court does not know what information Deputy Chelin had in his

20   possession when he was dispatched to the scene. (*See generally* Compl.)  This key fact

21   is not contained in the complaint.  The court does not know the terms of the protective

22   order, or, more importantly, the language of the order quashing the protective order.

1   (*See id.*)  There is no information about this in the complaint, and neither side has

2   provided the relevant documents for the court's consideration.  The court does not know

3   from the complaint whether S.L.H. called the police and made allegations of a protective

4   order violation, or whether Deputy Chelin appeared on the scene in response to Mr.

5   Ross' calls.  (*See id.*)  The court can rely on only Mr. Ross' allegations.  Under those

6   allegations, which the court must assume are true at this stage, *see Grant*, 315 F.3d at

7   1088-89, Deputy Chelin simply arrested Mr. Ross without making any investigation,

8   knowing (or not caring) that he had no right to do so, and with his only motivation being

9   racial bias.

10       In part, this shortage of information reflects the difficulty of prevailing on a

11   qualified immunity defense at the motion to dismiss stage.  *See Kwai Fun Wong v.*

12   *United States*, 373 F.3d 952, 957 (9th Cir. 2004) (noting that government officials are

13   technically permitted to file a motion to dismiss on grounds of qualified immunity, but

14   that it is "not a wise choice in every case [because] the ill-considered filing of a qualified

15   immunity [motion] on the pleadings alone can lead not only to a waste of scarce public

16   and judicial resources, but to the development of legal doctrine that has lost its moorings

17   in the empirical world . . .").  This case illustrates the fact that many constitutional

18   questions are fact-specific and are better resolved on summary judgment or at trial with

19   the benefit of a more complete record.  *See id.*

20       Here, in contrast to that ideal, the court knows barely any of the relevant

21   circumstances surrounding Mr. Ross' arrest.  Thus, the court cannot make a

22   determination of whether "the detaining officer [had] a 'particularized and objective

1   basis' for suspecting legal wrongdoing," *Arvizu*, 534 U.S. at 273, or whether "under the

2   totality of circumstances known to the arresting officers, a prudent person would have

3   concluded that there was a fair probability that [Mr. Ross] had committed a crime." *See*

4   *Grant*, 315 F.3d at 1085.  The court does not know what "reasonably trustworthy

5   information" Deputy Chelin had in his possession, and cannot make any determinative

6   conclusions one way or another based on the pleadings alone.

7        For these same reasons, the court cannot determine whether the alleged violation

8   of Mr. Ross' constitutional rights was "clearly established."  Certainly, it is self-evident

9   that an officer may not arrest a person knowing that he does not have reasonable

10  suspicion or probable cause to do so, or solely for purposes of advancing racial animus.

11  *See, e.g.*, *Sigmond-Ballesteros*, 285 F.3d at 1121; *Arvizu*, 534 U.S. at 273; *Morgan*, 997

12  F.2d at 1252.  It is less clear what Deputy Chelin's duties and responsibilities were under

13  the law in the circumstances before the court—chiefly because the court does not know

14  what those circumstances were.  Thus, it is impossible for the court to determine what a

15  reasonable officer would have done in the circumstances.  *See al-Kidd*, 131 S. Ct. at

16  2083.  Absent additional information, neither Mr. Ross nor Snohomish County can make

17  a showing one way or another with respect to whether Mr. Ross' rights were "clearly

18  established."

19

20

21

22

1  Accordingly, at this stage, the court rejects the County's qualified immunity

2  argument and DENIES the County's motion to dismiss Mr. Ross' § 1983 claims for false

3  arrest/improper seizure.[6]

4                      d.  *Claims for False Arrest, False Imprisonment, Assault and Battery, and*
                            *Malicious Prosecution*

5  Snohomish County also moves to dismiss Mr. Ross' state law claims, but the

6  County's arguments suffer from the same problem.  As discussed above, it is impossible

7  to make a probable cause determination at this stage of the litigation.  Yet, many of Mr.

8  Ross' claims hinge on whether Deputy Chelin had probable cause to arrest him during the

9  August 2011 incident.  Specifically, this is because probable cause is a complete defense

10  to Mr. Ross' state law claims for false arrest, false imprisonment, and malicious

11  prosecution.  *See Youker v. Douglas Cnty.*, 258 P.3d 318 (Wash. Ct. App. 2007) (false

12  arrest); *Moore v. Pay'N Save Corp.*, 581 P.2d 159, 164 (Wash. Ct. App. 1978) (false

13  imprisonment); *Bender v. City of Seattle*, 664 P.2d 942, 500 (Wash. 1983) (noting that

14  lack of probable cause is an element of a prima facie case for malicious prosecution).

15  Likewise, Mr. Ross' assault and battery claim might be barred if there was probable

16  cause to believe Mr. Ross had violated a protective order.  This is because, under

17  Washington law, force is not unlawful "when necessarily used by a public officer in the

18  performance of a legal duty."  RCW 9A.16.020(1).  If Deputy Chelin had probable cause

19  _____

20      [6] Snohomish County also makes a cursory argument that state-law qualified immunity applies.  (*See* Mot. at 20.)  Washington State-law qualified immunity applies if the officer in

21  question (1) is carrying out a statutory duty; (2) according to the procedures dictated by statute and their superiors; and (3) acted reasonably.  *See, e.g.*, *McKinney v. Tukwila*, 13 P.3d 631, 640 (Wash. Ct. App. 2000).  This determination is impossible to make at this time for the same

22  reasons described above with respect to federal qualified immunity.

1    to believe that Mr. Ross had violated a protective order, he would have had a legal duty

2    to arrest Mr. Ross.  *See* RCW 10.31.100(2)(a) (requiring arrest where there is probable

3    cause to believe a protective order has been violated).  Thus, his use of force might have

4    been necessary.  Absent more information on this issue, there is no basis for dismissing

5    Mr. Ross' assault and battery claim.

6          Thus, Snohomish County has not established a viable basis for dismissing Mr.

7    Ross' state law claims.  If the County established probable cause, it would be a different

8    story.  But it has not, and cannot at this stage.  Accordingly, the court DENIES

9    Snohomish County's motion to dismiss Mr. Ross' claims for false arrest, false

10   imprisonment, assault and battery, and malicious prosecution.

11                        **IV.     CONCLUSION**

12         As described above, the court GRANTS in part and DENIES in part Snohomish

13   County's motion to dismiss (Dkt. # 29).

14         Dated this 28th day of March, 2014.

15

16

17

     JAMES L. ROBART
18   United States District Judge

19

20

21

22

ORDER- 29