UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARCUS TERRELL ROSS,

                    Plaintiff,

            v.

SNOHOMISH COUNTY, et al.,

                    Defendants.

CASE NO. C13-1467JLR

ORDER GRANTING SUMMARY JUDGMENT

## I.   INTRODUCTION

Before the court is Defendant Snohomish County's motion for summary judgment.  (7/10/14 Mot. (Dkt. # 38).)  The court has considered the motion, the parties' submissions filed in support thereof and opposition thereto, the record, and the applicable law.  Being fully advised, the court GRANTS Snohomish County's motion.[1]

_____

[1] Neither party requested oral argument, and the court deems it unnecessary for proper disposition of Snohomish County's motion.

ORDER- 1

1
## II.    BACKGROUND

2
## A.    Factual History

3        This is a civil rights case.  Mr. Ross alleges that Snohomish County, unnamed

4 Snohomish County police officers, and Does 6-10 (collectively "Snohomish County")

5 discriminated against him on the basis of his race, assaulted him, and falsely imprisoned,

6 arrested, and maliciously prosecuted him.  (*See* Am. Compl. (Dkt. # 2).)  Mr. Ross'

7 allegations stem from two incidents in which Snohomish County police officers detained

8 him.  (*See id.*)  Both incidents involved Mr. Ross' ex-wife, S.L.H.  The court previously

9 dismissed all of Mr. Ross' claims arising from the first incident based on the applicable

10 statute of limitations.  (*See* 3/28/14 Ord. (Dkt. # 34).)

11        The second incident occurred on August 19, 2011, when a Snohomish County

12 Sheriff's Deputy, James Chelin, detained Mr. Ross.  (Am. Compl. ¶¶ 22, 25.)  On that

13 day, Snohomish County Superior Court dismissed S.L.H.'s civil protection order against

14 Mr. Ross and ordered that Mr. Ross could pick up his children from daycare.  (*Id.*)  Per

15 the state court's order, Mr. Ross went to pick up his children from daycare that afternoon.

16 (*Id.* ¶ 22.)  When he arrived at the daycare, Mr. Ross called 911 to inform them that he

17 was picking up his children pursuant to the state court's order and asked that the

18 Snohomish County Sheriff's Office send an officer to the daycare to ensure there was no

19 trouble with S.L.H.  (*Id.*)  Before the deputy could arrive, however, S.L.H. appeared at

20 the daycare.  (*Id.* ¶ 23.)  Mr. Ross again called 911 to request a deputy's assistance and to

21 ask when a deputy would arrive.  (*Id.* ¶ 24.)  After Mr. Ross' second 911 call, his children

22 returned to the daycare from a field trip and got into Mr. Ross' car.  (*Id.*)  Mr. Ross then

1    called 911 a third time to let them know that "he had both of his children and he wanted

2    to leave." (*Id.*)  The 911 operator instructed Mr. Ross to stay at the daycare until the

3    deputy arrived and resolved any issues; the daycare staff also requested that Mr. Ross

4    speak to a supervisor before leaving with his children.  (*Id.*)

5        The Snohomish County Sheriff's Office dispatched Deputy Chelin to the daycare

6    for what was originally coded as a court order violation.  (Chelin Decl. (Dkt. # 41) ¶ 11.)

7    While Deputy Chelin was en route, dispatch told him that there was a valid protective

8    order prohibiting contact between Mr. Ross and his two children, M.R. and T.R., as well

9    as a protective order prohibiting contact between Mr. Ross and S.L.H.  (*Id.*)  The record

10   remains unclear as to which protective order between Mr. Ross and S.L.H. police

11   dispatch was referring.  (*See id.*)  Dispatch also informed Deputy Chelin that a daycare

12   employee had called 911 and reported that Mr. Ross was at the location and attempting to

13   pick up his two children and leave.  (*Id.*)  In addition, dispatch also stated that daycare

14   staff members were blocking Mr. Ross' car and preventing him from leaving with the

15   children.  (*Id.*)

16       Upon driving into the daycare parking lot, Deputy Chelin "saw two staff members

17   standing behind a vehicle, preventing the car from leaving."  (*Id.* ¶ 12.)  Deputy Chelin

18   also observed that "[t]wo children were inside the car and a man was standing beside the

19   car."  (*Id.*)  At the time of Deputy Chelin's arrival at the daycare, S.L.H. stood across the

20   street from the daycare parking lot.  (*Id.* ¶ 12.)  Deputy Monson (presumably another

21   Snohomish County Sheriff's Deputy) later measured the distance between where Mr.

22

1    Ross' vehicle had been located and where S.L.H.'s vehicle had been located.  (*Id.* ¶ 26.)

2    The vehicles were approximately 254 feet apart.  (*Id.*)

3          Deputy Chelin asked Mr. Ross to identify himself, and when Mr. Ross did so

4    Deputy Chelin allegedly "immediately grabbed him by the arm [and] twist[ed] it behind

5    his back and push[ed] him over the rear of his vehicle" and escorted Mr. Ross to the back

6    of his squad car.  (Am. Compl. ¶¶ 26-27.)  Mr. Ross alleges that during his confinement

7    in Deputy Chelin's patrol car, Deputy Chelin "refused to release [him] while yelling at

8    him and berating him as [his] children looked on, as well as [daycare] staff, other parents

9    picking up their children, and S.L.H."  (*Id.*)

10         While Mr. Ross was confined in Deputy Chelin's patrol car, Deputy Chelin

11   walked across the street to speak with S.L.H.  (Chelin Decl. ¶ 16.)  S.L.H. acknowledged

12   that the Snohomish County protective order, the only order involving the children, had

13   been dismissed earlier that day.  (*Id.*)  S.L.H. also stated that there were two other

14   protective orders in place that prohibited contact between her and Mr. Ross:  one from

15   King County and one from Pierce County.  (*Id.*)  S.L.H. stated to Deputy Chelin that the

16   terms of the protective orders required Mr. Ross to stay 500 feet away from her.  (*Id.*)

17   When questioned about the 500-foot requirement by Deputy Chelin, Mr. Ross argued that

18   he was not within 500 feet of S.L.H. but apparently did not deny the existence of the

19   provision.  (*See* 7/10/14 Bosch Decl. (Dkt. # 39) Ex. A at 20.)

20         Deputy Chelin requested through the Sheriff's Office dispatch that the Records

21   Department of the Snohomish County Sheriff's Office fax a copy of the dismissed

22   Snohomish County order to the South Precinct so that his supervisor, Sergeant Blodgett,

could verify that it was no longer valid.  (Chelin Decl. ¶ 17.)  In addition, Deputy Chelin requested that copies of the King County and Pierce County orders be sent to him for examination.  (*Id.*)  Mr. Ross allegedly continued sitting in the back of Deputy Chelin's patrol car for 35 minutes in handcuffs before Deputy Chelin released him.  (Am. Compl. ¶ 29.)  The handcuffs allegedly "dug into [Mr. Ross'] wrist causing him great pain.  (*Id.* ¶ 28.)

Eventually, Sergeant Blodgett contacted Deputy Chelin and confirmed that the Snohomish County order had been dismissed earlier that day.  (Chelin Decl. ¶ 21.) Sergeant Blodgett and Deputy Chelin continued to investigate whether Mr. Ross had violated the terms of the King County or Pierce County orders.  (*Id.* ¶ 22.)  The Pierce County order prohibited Mr. Ross from contacting S.L.H. either directly or indirectly. (*See* Chelin Decl. Ex. B at 19.)  Deputy Chelin apparently concluded that Mr. Ross had not violated the Pierce County order.  (*See* Chelin Decl. ¶¶ 22, 24.)  The Sheriff's Dispatch Office reported that it was unable to locate the King County order.[2]  (*Id.* ¶ 22.) Deputy Chelin then allowed Mr. Ross to exit his patrol car and removed Mr. Ross' handcuffs.  (*Id.* ¶ 24.)

Upon Mr. Ross' release, Deputy Chelin allegedly said, "[y]ou are lucky you are not going to jail!"  (*Id.* ¶ 29.)  Deputy Chelin also allegedly asked Mr. Ross if S.L.H. could come within three feet of him to speak with the children and allegedly screamed at

_____

[2] Deputy Chelin believes that the King County order was not originally located due to a misunderstanding of S.L.H.'s last name on the order.  (Chelin Decl. ¶ 28.)  Apparently S.L.H.'s last name had changed since the initiation of the King County order.  (*See id.*)

1   Mr. Ross about the meaning of protective orders when Mr. Ross refused.  (*Id.* ¶ 30.)  Mr.

2   Ross contends that Deputy Chelin, "acting with deliberate malice and motivated by race,

3   sought to humiliate and torment [him] under the color of law."  (*Id.* ¶ 31.)  He also

4   contends that Deputy Chelin perjured himself in his police report on the incident by

5   claiming that S.L.H. had been granted a protection order against Mr. Ross.  (*Id.* ¶ 32.)

6   **B.   Procedural History**

7        Mr. Ross filed the instant lawsuit against Snohomish County on August 16, 2013,

8   alleging state and federal claims of racial discrimination, and state claims of false arrest,

9   malicious prosecution, outrage, and assault and battery arising from his two interactions

10  with the Snohomish County Sheriff's deputies.  (*See* Compl. (Dkt. # 1).)  Mr. Ross

11  amended his complaint the same day it was filed, and his amended complaint alleges

12  these same causes of action.  (*Compare* Compl. *with* Am. Compl.)

13       Snohomish County has now attempted to defeat Mr. Ross' complaint four times.

14  After receiving the complaint on August 19, 2013, Snohomish County initially moved to

15  dismiss the action on the basis of improper service and failure to state a claim.  (10/3/13

16  Mot. (Dkt. # 7).)  Because Mr. Ross served Snohomish County himself, service was

17  indeed improper under Fed. R. Civ. P. 4(c)(2), which prohibits service by a party to the

18  case, and the court ordered service quashed on November 26, 2013, but denied

19  Snohomish County's motion to dismiss.  (11/26/13 Ord. (Dkt. # 19).)  Next, Snohomish

20  County moved to dismiss the action because Mr. Ross had failed to timely correct the

21  service defects.  (12/23/13 Mot. (Dkt. # 20).)  The court again denied Snohomish

22  County's motion to dismiss and extended Mr. Ross' time to effect service.  (2/3/14 Ord.

1   (Dkt. # 28).)  On February 4, 2014, Snohomish County moved to dismiss Mr. Ross'

2   complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

3   (2/4/14 Mot. (Dkt. # 29).)  The court granted in part Snohomish County's February 4,

4   2014, motion, dismissing all claims arising out of the January 19, 2010, incident.  (*See*

5   3/28/14 Ord. (Dkt. # 34).)  In addition, the court dismissed all of Mr. Ross' 28 U.S.C.

6   § 1983 claims against Snohomish County, as well as his § 1983 claims against unnamed

7   police officers for excessive force and due process violations.  (*See id.*)  Finally, the court

8   dismissed Mr. Ross' claims for outrageous conduct/intentional infliction of emotional

9   distress and violation of Washington's Law Against Discrimination.  (*See id.*)

10      Mr. Ross' remaining claims are:  (1) a § 1983 claim against unnamed police

11   officers for improper seizure/false arrest, (2) a state claim for false arrest/imprisonment,

12   (3) a state claim for assault and battery, and (4) a state claim for malicious prosecution.

13   Snohomish County now requests summary judgment on all of Mr. Ross' remaining

14   claims.  (*See generally* 7/10/14 Mot.)

### III.   ANALYSIS

**A.   Legal Standard**

17      Summary judgment is appropriate if the evidence, when viewed in the light most

18   favorable to the non-moving party, demonstrates "that there is no genuine dispute as to

19   any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

20   P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty. of L.A.*,

21   477 F.3d 652, 658 (9th Cir. 2007).  The moving party bears the initial burden of showing

22   there is no genuine issue of material fact and that he or she is entitled to prevail as a

matter of law.  *Celotex*, 477 U.S. at 323.  If the moving party meets his or her burden, the non-moving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial."  *Galen*, 477 F.3d at 658.  The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party."  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

**B.    Snohomish County is Entitled to Summary Judgment**

Snohomish County is entitled to summary judgment on all of Mr. Ross' claims because Deputy Chelin had probable cause to arrest Mr. Ross.  All but one of the alleged factual disputes that Mr. Ross claims exist are immaterial to Snohomish County's defenses.  Further, the one alleged factual dispute that is material to Snohomish County's defenses is not supported by more than Mr. Ross' assertion.  Mr. Ross states, "[t]hough the defendants have stated that the distance from where the car was parked inside the parking lot, to where S.L.H. was parked outside on the street was 254 feet, it is the plaintiff's assertion that the distance was well over 500 feet."  (7/23/14 Resp. (Dkt. # 43) at 8.)  To successfully rebut a motion for summary judgment, however, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact.  *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000).  Mr. Ross does not point to any facts in the record that support his assertion.  Thus, there are no genuine disputes of material facts.

At the time of Snohomish County's previous motion to dismiss (*see* 2/4/14 Mot.), the record lacked any evidence that could have provided insight into what information

Deputy Chelin possessed at the time he arrived at the daycare (*see* 3/28/14 Ord. ("Specifically, the court does not know what information Deputy Chelin had in his possession when he was dispatched to the scene.").)  Mr. Ross acknowledged that there was no way for him to have known what information Deputy Chelin possessed.  (*See* 7/10/14 Bosch. Decl. Ex. A at 17.)  Since its last motion, Snohomish County has submitted a declaration by Deputy Chelin that provides insight into the previously missing information.  (*See generally* Chelin Decl.)

1. Mr. Ross' § 1983 Improper Seizure/False Arrest Claim

The unnamed defendants (including Deputy Chelin) are entitled to summary judgment on Mr. Ross' § 1983 claim for improper seizure/false arrest because Deputy Chelin had probable cause to arrest Mr. Ross and because the unnamed defendants are protected by the doctrine of qualified immunity.  "A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment provided that the arrest was made without probable cause or other justification."  *Dubner v. City and Cnty. of San Fran.*, 266 F.3d 959, 964 (9th Cir. 2001).  To prove a claim for false arrest or improper seizure of a person under § 1983, a plaintiff must demonstrate that:  (1) the defendant lacked probable cause to arrest the plaintiff, and (2) the defendant actually arrested the plaintiff.  *Hernandez v. Cnty. of Marin*, No. C 11-03085, 2012 WL 1207231, at *8 (N.D. Cal. April 11, 2012) (citing *Cabrera v. City of Hunting Park*, 159 F.3d 374, 380 (9th Cir. 1998)).  Snohomish County contends that Mr. Ross' § 1983 claim fails for the following reasons:  (1) Mr. Ross was not actually arrested, (2) Deputy Chelin had probable cause to arrest Mr. Ross, and (3) the doctrine of qualified immunity protects all unnamed

1  defendants (including Deputy Chelin) from suit.  The following sections address each of

2  Snohomish County's arguments.

3          *a.   Whether Deputy Chelin Arrested Mr. Ross is Irrelevant*

4          Mr. Ross claims that his detention constituted an arrest.  (*See* Am. Compl. ¶¶ 27,

5  47.)  Snohomish County, in contrast, claims that Deputy Chelin temporarily detained Mr.

6  Ross, but did not actually arrest him.  (*See* 7/10/14 Mot. at 11-12.)  The court does not

7  need to answer this question, however, because even assuming Deputy Chelin did arrest

8  Mr. Ross, he had probable cause to do so.

9          *b.   Deputy Chelin Had Probable Cause to Initially Arrest Mr. Ross and to*
              *Continue Holding Him Under Arrest*

10         To comply with constitutional protections, an arrest must be supported by

11 probable cause.  *Adams v. Williams*, 407 U.S. 143, 148-49 (1972).  Probable cause is an

12 objective standard.  *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007).

13 Probable cause exists if "under the totality of circumstances known to the arresting

14 officers, a prudent person would have concluded that there was a fair probability that [the

15 defendant] had committed a crime."  *Grant v. City of Long Beach*, 315 F.3d 1081, 1085

16 (9th Cir. 2002).  Stated another way, probable cause to arrest exists when the officer has

17 knowledge or reasonably trustworthy information sufficient to lead a person of

18 reasonable caution to believe that an offense has been or is being committed.  *Beck v.*

19 *Ohio*, 379 U.S. 89, 91 (1964).

20         Deputy Chelin had reasonably trustworthy information sufficient to lead a person

21 of reasonable caution to believe that Mr. Ross was committing an offense by having

22

ORDER- 10

1    contact with his children.  Deputy Chelin was originally dispatched to the scene for a

2    court order violation.  (Chelin Decl. ¶ 11.)  Police dispatch told Deputy Chelin that Mr.

3    Ross was prohibited from having contact with his children by a valid protective order.

4    (*Id.*)  Police dispatch also told Deputy Chelin that daycare staff members were blocking

5    Mr. Ross' car and preventing him from leaving with the children.  (*Id.*)

6            Deputy Chelin's observations at the scene would lead a person of reasonable

7    caution to believe that Mr. Ross had, in fact, committed the offense described by police

8    dispatch.  Upon pulling into the daycare parking lot, Deputy Chelin "saw two staff

9    members standing behind a vehicle, preventing the car from leaving."  (*Id.* ¶ 12.)  Deputy

10   Chelin observed that "[t]wo children were inside the car and a man was standing beside

11   the car."  (*Id.*)  Deputy Chelin approached Mr. Ross and asked him to identify himself,

12   confirming that he was, in fact, Marcus Ross.  (7/23/14 Ross Decl. (Dkt. # 44) at 3.)

13   Given the information provided by police dispatch and his observations on the scene,

14   Deputy Chelin was reasonable in concluding that there was a fair probability that Mr.

15   Ross had committed a crime.  Thus, at the start of Mr. Ross' arrest, Deputy Chelin had

16   probable cause.  *See Beck*, 379 U.S. at 91.

17           Deputy Chelin continued to have probable cause to hold Mr. Ross under arrest

18   based on possible violations of the King County and Pierce County protective orders

19   prohibiting Mr. Ross from having contact with S.L.H.  While Deputy Chelin was en route

20   to the daycare location, police dispatch told Deputy Chelin that a protective order was in

21   place prohibiting contact between Mr. Ross and S.L.H.  (Chelin Decl. ¶ 11.)  While

22   investigating, Deputy Chelin discovered that two other protective orders also potentially

barred Mr. Ross from having contact with S.L.H.  (Chelin Decl. ¶ 16.)  S.L.H. stated to

Deputy Chelin that the terms of the King County protective order required Mr. Ross to

stay 500 feet away from her.  (*Id.*)  When questioned about the 500-foot requirement by

Deputy Chelin, Mr. Ross argued that he was not within 500 feet of S.L.H. but apparently

did not deny the existence of the provision.  (*See* 7/10/14 Bosch Decl. Ex. A at 20.)

Coupled with Mr. Ross' apparent acknowledgement of the 500-foot requirement and

police dispatches communication, S.L.H.'s statements constitute a reasonably trustworthy

source of information for Deputy Chelin to believe that it would be a criminal offense for

Mr. Ross to be within 500 feet of S.L.H.

    At the time of Deputy Chelin's arrival at the daycare, S.L.H. stood across the

street from the daycare parking lot.  (Chelin Decl. ¶ 12.)  Deputy Monson (presumably

another Snohomish County Sheriff's deputy) later measured the distance between where

Mr. Ross' vehicle had been located and where S.L.H.'s vehicle had been located to be

254 feet.  (*Id.* ¶ 26.)  Under the circumstances, a prudent person would have concluded

that there was a fair probability that Mr. Ross had committed an offense.  *See Grant*, 315

F.3d at 1085.  Thus, Deputy Chelin had probable cause to continue holding Mr. Ross

under arrest for violation of a protective order.

> c.  *Unnamed Defendants (Including Deputy Chelin) Are Entitled to Qualified Immunity*

    The unnamed defendants (including Deputy Chelin) are also entitled to qualified

immunity from Mr. Ross' § 1983 claim.  Qualified immunity protects government

officials from liability for civil damages insofar as their conduct does not violate clearly

1   established statutory or constitutional rights about which a reasonable person would have

2   known. *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (citing *Pearson v.*

3   *Callahan*, 555 U.S. 223, 231 (2009)). In effect, qualified immunity "gives government

4   officials breathing room to make reasonable but mistaken judgments." *Green v. City and*

5   *Cnty. of San. Fran.*, --- F.3d ----, 2014 WL 1876273, at *11 (9th Cir. 2014) (quotation

6   marks omitted). Qualified immunity "protects all but the plainly incompetent or those

7   who knowingly violate the law." *Id.*

8        An officer will be denied qualified immunity in a § 1983 action "only if (1) the

9   facts alleged, taken in the light most favorable to the party asserting injury, show that the

10  officer's conduct violated a constitutional right, and (2) the right at issue was clearly

11  established at the time of the incident such that a reasonable officer would have

12  understood her conduct to be unlawful in that situation." *Torres v. City of Madera*, 648

13  F.3d 1119, 1123 (9th Cir. 2011). Courts have discretion to decide the order in which to

14  address the two prongs. *Pearson*, 555 U.S. at 242. When addressing the second prong,

15  whether a right is "clearly established," two separate determinations are required: (1)

16  whether the law governing the conduct at issue was clearly established, and (2) whether

17  the facts as alleged could support a reasonable belief that the conduct in question

18  conformed to the established law. *Green*, 2014 WL 1876273, at *11.

19       Addressing the second prong, the court holds that even if Deputy Chelin violated

20  Mr. Ross' constitutional right, that right was not clearly established. A reasonable officer

21  in Deputy Chelin's circumstances could have believed that the conduct in question

22  conformed to the established law for all of the reasons described in section III.B.1.b. of

1    this order (the immediately preceding section).  Thus, Snohomish County is entitled to

2    qualified immunity.  *See id.*  Because Mr. Ross' right was not clearly established at the

3    time of the incident, the court does not need to address whether Deputy Chelin violated

4    one of Mr. Ross' constitutional rights.

5         2.  Mr. Ross' State Claims

6            a.  *Probable Cause is a Complete Defense to Mr. Ross' State Claims*

7         Snohomish County is also entitled to summary judgment on Mr. Ross' state claims

8    for false arrest/imprisonment, assault and battery, and malicious prosecution.  These

9    claims all fail because probable cause is, directly or indirectly, a complete defense to each

10   claim.  *See Hanson v. City of Snohomish*, 852 P.2d 295, 301 (Wash. 1993) ("As with an

11   action for malicious prosecution, probable cause is a complete defense to an action for

12   false arrest and imprisonment."); RCW 9A.16.020(1) (force used by a police officer is

13   not unlawful "when necessarily used by a public officer in the performance of a legal

14   duty); RCW 10.31.100(2)(a) (requiring arrest where there is probable cause to believe a

15   protective order has been violated).  In addition to being barred because Deputy Chelin

16   had probable cause, Mr. Ross' claim for malicious prosecution fails for an additional

17   reason:  the Snohomish County Prosecuting Attorney's Office declined to criminally

18   charge this incident.  (*See* Boska Decl. (Dkt. # 40).)  Thus, Mr. Ross could not prove that

19   the prosecution was maliciously instituted or that the proceedings were terminated on the

20   merits in his favor (two necessary elements of a malicious prosecution claim).  *See*

21   *Bender v. City of Seattle*, 664 P.2d 492, 500 (Wash. 1983).

22

1

### IV.    CONCLUSION

2        For the foregoing reasons, the court GRANTS Snohomish County's motion for

3 summary judgment (Dkt. # 38) on all of Mr. Ross' claims.

4        Dated this 14th day of August, 2014.

5

6

7        _____

8        JAMES L. ROBART
         United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22